1

2

3

4

5            IN THE UNITED STATES DISTRICT COURT

6            FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8    KENNETH E. BOATRIGHT JR.,                    No. C -12-00009 EDL

9            Plaintiff,                    **AMENDED ORDER RE: DEFENDANT'S**
                                           **MOTION TO DISMISS**
10    v.

11   AUORA LOAN SERVICES,

12            Defendant.
     _____/

13

14            On February 7, 2012 Defendant Aurora Loan Services ("Defendant") filed a Motion to

15   Dismiss Plaintiff's First Amended Complaint.  On April 27, 2012, the Court issued an Order

16   granting Defendant's motion without leave to amend on the grounds that judicial estoppel barred

17   Plaintiff's complaint.  On May 7, 2012, Plaintiff filed a Motion for Reconsideration, which was

18   stricken without prejudice because Plaintiff failed to comply with Civil Local Rule 7-9.  On May 10,

19   2012, Plaintiff filed a Motion for Leave to File a Motion for Reconsideration in compliance with

20   Local Rule 7-9.  On June 1, 2012, the Court denied Plaintiff's Motion for Leave to File a Motion for

21   Reconsideration, but ordered the parties to file briefs regarding whether the dismissal of Plaintiff's

22   bankruptcy case constituted acceptance by the bankruptcy court of Plaintiff's incomplete schedule of

23   assets for purposes of the second factor of the judicial estoppel analysis.  See Hamilton v. State Farm

24   Fire & Cas. Co., 270 F.3d 778, 782-83 (9th Cir. 2001) (stating that in deciding whether to exercise

25   its discretion in applying judicial estoppel: (1) ". . . a party's later position must be 'clearly

26   inconsistent' with its earlier position;" (2) the party must have "succeeded in persuading a court to

27   accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later

28   proceeding would create 'the perception that either the first or the second court was misled;'" and

     (3) the court must determine "whether the party seeking to assert an inconsistent position would

*United States District Court*
*For the Northern District of California*

United States District Court
For the Northern District of California

derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.")
(internal citation omitted).  In ruling on Defendant's Motion to Dismiss, the Court had found that the
question of whether Plaintiff persuaded the bankruptcy court to accept his incomplete schedule of
assets was a close one.  Although the Court decided that question against Plaintiff, the Court ordered
further briefing on that issue in light of Gottlieb v. Kest, 141 Cal.App.4th 110 (2006).  The parties
filed their briefs on June 18, 2012.

The Court has carefully reviewed the parties' June 18, 2012 briefs as well as the other briefs
filed in connection with Defendant's Motion to Dismiss.  For the following reasons, the Court has
reconsidered its April 27, 2012 Order and issues this Amended Order granting in part and denying in
part Defendant's Motion to Dismiss.

**Legal Standard for Motion to Dismiss**

A complaint will survive a motion to dismiss if it contains "sufficient factual matter . . . to
'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)
(citing Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007)).  The reviewing court's
"inquiry is limited to the allegations in the complaint, which are accepted  as true and construed in
the light most favorable to the plaintiff." Lazy Y Ranch LTD v. Behrens, 546 F.3d 580, 588 (9th
Cir. 2008).

A court need not, however, accept as true the complaint's "legal conclusions." Iqbal, 129 S.
Ct. at 1949.  "While legal conclusions can provide the framework of a complaint, they must be
supported by factual allegations." Id. at 1950.  Thus, a reviewing court may begin "by identifying
pleadings that, because they are no more than conclusions, are not entitled to the assumption of
truth." Id.

Courts must then determine whether the factual allegations in the complaint "plausibly give
rise to an entitlement of relief." Id.  Though the plausibility inquiry "is not akin to a probability
requirement," a complaint will not survive a motion to dismiss if its factual allegations "do not
permit the court to infer more than the mere possibility of misconduct . . . ." Id. at 1949 (internal
quotation marks omitted) & 1950.  That is to say, plaintiffs must "nudge[] their claims across the
line from conceivable to plausible." Twombly, 550 U.S. at 570.

**United States District Court**
For the Northern District of California

1  **Discussion**

2  The allegations in the complaint in this case are set forth in detail in the Court's April 27,

3  2012 Order and are incorporated here by reference.

4  **1.**  **Plaintiff is not judicially estopped from proceeding on his claims against Defendants**

5  "Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage

6  by asserting one position, and then later seeking an advantage by taking a clearly inconsistent

7  position." Hamilton v. State Farm Fire & Cas. Co., 270 F.3d 778, 782 (9th Cir. 2001) (citing, e.g.,

8  Rissetto v. Plumbers & Steamfitters Local 343, 94 F.3d 597, 600-601 (9th Cir.1996)). "This court

9  invokes judicial estoppel not only to prevent a party from gaining an advantage by taking

10  inconsistent positions, but also because of 'general consideration[s] of the orderly administration of

11  justice and regard for the dignity of judicial proceedings,' and to 'protect against a litigant playing

12  fast and loose with the courts.'" Hamilton, 270 F.3d at 783 (quoting Russell v. Rolfs, 893 F.2d 1033,

13  1037 (9th Cir.1990)); see also Swahn Group, Inc. v. Segal, 183 Cal.App.4th 831, 841 (2010) (same).

14  A court may consider three factors in deciding whether to exercise its discretion in applying judicial

15  estoppel: (1) ". . . a party's later position must be 'clearly inconsistent' with its earlier position;" (2)

16  the party must have "succeeded in persuading a court to accept that party's earlier position, so that

17  judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that

18  either the first or the second court was misled;'" and (3) the court must determine "whether the party

19  seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair

20  detriment on the opposing party if not estopped." Hamilton, 270 F.3d at 782-83 (quoting New

21  Hampshire v. Maine, 532 U.S. 742, 750-51 (2001)). This is not an inflexible standard, or an

22  "exhaustive formula for determining the applicability of judicial estoppel." Hamilton, 270 F.3d at

23  783; see also Neighbors v. Mortgage Electronic Registration System, 2009 WL 192445, * 1, 4 (N.D.

24  Cal. Jan. 27, 2009) (non-judicial foreclosure began and Notice of Trustee's Sale recorded prior to

25  homeowner's initiation of bankruptcy proceedings, and homeowner did not disclose claims against

26  mortgagee as assets in bankruptcy proceeding, despite having knowledge of all the facts underlying

27  the claims before filing for bankruptcy, so homeowner estopped from prosecuting claims: "Plaintiff

28  has thus clearly taken inconsistent positions because she failed to list her claims against defendants

3

United States District Court
For the Northern District of California

1  as assets in the bankruptcy proceedings as she was required to do under 11 U.S.C. § 521(1), and then

2  later sued defendants on the same claims.").

3      A debtor filing for bankruptcy has a duty to schedule all property that the debtor owes.  11

4  U.S.C. § 521(1).  "Causes of action are separate assets which must be formally listed."  Cusano v.

5  Klein, 264 F.3d 936, 947 (9th Cir. 2001).  At the conclusion of the bankruptcy proceedings, all

6  assets properly scheduled by the debtor, and not otherwise administered by the trustee, are

7  "abandoned to the debtor."  11 U.S.C. § 554(c).  If a debtor fails to "properly to schedule an asset,

8  including a cause of action, that asset continues to belong to the bankruptcy estate" and does not

9  revert to the debtor.  Cusano, 264 F.3d at 945-46, 948; see also Stein v. United Artists Corp., 691

10  F.2d 885, 891 (9th Cir. 1982) (". . . abandonment results only when the trustee knows of the

11  existence of the property, so that, at the least, an intent to disclaim can be inferred. When the

12  bankrupt fails to list an asset, he cannot claim abandonment because the trustee has had no

13  opportunity to pursue the claim.").  Once a claim becomes part of the bankruptcy estate, "only the

14  trustee has the authority to prosecute and/or settle" the claim.  Cain v. Hyatt, 101 B.R. 440, 442

15  (Bankr. E.D. Pa. 1989).

16      Although the question of whether judicial estoppel applies remains a close one, the Court

17  has determined upon reconsideration that the Hamilton factors weigh against barring Plaintiff's

18  action based on judicial estoppel.  It is undisputed that Plaintiff took inconsistent positions in this

19  case and his earlier bankruptcy cases by failing to list his claims against Defendant in this

20  bankruptcy schedules, and that Plaintiff had knowledge of his claims relating to his mortgage loan

21  before filing his bankruptcy schedules as described in the Court's April 27, 2012 Order.  Further,

22  Plaintiff may have gained an unfair advantage by pursuing these claims against Defendants after

23  failing to disclose them in the bankruptcy proceedings.  See Hamilton, 270 F.3d at 784 ("The debtor,

24  once he institutes the bankruptcy process, disrupts the flow of commerce and obtains a stay and the

25  benefits derived by listing all his assets. . . . Hamilton's failure to list his claims against State Farm

26  as assets on his bankruptcy schedules deceived the bankruptcy court and Hamilton's creditors, who

27  relied on the schedules to determine what action, if any, they would take in the matter.").

28      The third factor, however -- whether Plaintiff persuaded the bankruptcy court to accept his

United States District Court
For the Northern District of California

incomplete schedule of assets -- weighs against application of judicial estoppel.  A discharge of

debts by the bankruptcy court is not the only method of satisfying the third factor.  See Hamilton,

270 F.3d at 784 ("Our holding does not imply that the bankruptcy court must actually discharge

debts before the judicial acceptance prong may be satisfied. The bankruptcy court may "accept" the

debtor's assertions by relying on the debtor's nondisclosure of potential claims in many other

ways."); see also Allers-Petrus v. Columbia Recovery Group, 2009 WL 799676, at *2 (W.D. Wash.

Mar. 24, 2009) ("The bankruptcy court need not discharge debts before the judicial acceptance

prong is satisfied. The court in Hamilton applied judicial estoppel to the claim despite the

bankruptcy court's vacation of the prior discharge.").  But dismissal of Plaintiff's bankruptcy case

alone, without any showing that the bankruptcy court relied on Plaintiff's incomplete schedules, is

insufficient to meet the third prong.  On similar facts, the court in Gottlieb v. Kest, 141 Cal.App.4th

110 (2006) denied application of judicial estoppel.  The court stated:

> As stated more recently: "[W]hile the Ninth Circuit has used sweeping language
> condemning 'playing fast and loose' with courts, its narrow holdings more cautiously
> require that the [bankruptcy] court have 'accepted' the earlier position before
> imposing a judicial estoppel.... [¶] The meaning of 'acceptance' in the bankruptcy
> context is construed broadly to 'protect[ ] the integrity of the bankruptcy process.' ...
> Among other possibilities, the grant of a discharge (even if later revoked) or the
> confirmation of a plan may constitute sufficient 'acceptance' of the accuracy of
> schedules so as to permit judicial estoppel." ( In re An–Tze Cheng (Bankr.9th
> Cir.2004) 308 B.R. 448, 453, affd. mem. (9th Cir.2005) 160 Fed.Appx. 644, citations
> omitted.)
>
> RKG did not submit a reorganization plan, creditors did not accept a plan, and the
> bankruptcy court did not review or confirm a plan. At no time did the bankruptcy
> court rely on the value of RKG's assets. And the Chapter 11 case was dismissed
> without a determination as to any purported debts. Such a dismissal is intended to "
> 'undo the bankruptcy case, as far as practicable, and restore all property rights to the
> position in which they were found at the commencement of the case.' " ( In re
> Weston (E.D.Cal.1989) 110 B.R. 452, 456, affd. mem. (9th Cir.1992) 967 F.2d 596;
> see In re Space Bldg. Corp. (D.Mass.1996) 206 B.R. 269, 273–274.) "After an order
> of dismissal, the debtor's debts and property are subject to the general laws,
> unaffected by bankruptcy concepts." ( In re Income Property Builders, Inc. (9th
> Cir.1982) 699 F.2d 963, 965.) Thus, RKG's nondisclosure of its legal claims did not
> affect any unpaid creditor's ability to pursue it or Gottlieb for the full amount due—as
> illustrated by Kest's cross-complaint. In short, Gottlieb, as RKG's assignee, did not
> successfully assert his prior position.

Gottlieb, 141 Cal.App.4th at 141-42.

     Defendant's argument to the contrary, relying on Thomas v. Gordon, 85 Cal.App.4th 113

(2000) is not persuasive.  In Thomas, which was decided prior to New Hampshire and Gottlieb, a

1   doctor brought an action against the accountant for two corporations organized to support a medical

2   clinic for the alleged failure to keep the plaintiff informed of the corporations' financial affairs.  The

3   plaintiff admitted to having transferred her assets to the corporation for the purpose of keeping the

4   assets from her creditors.  The plaintiff had filed three documents in connection with her bankruptcy

5   petitions in which she failed to list any interests or funds in the corporation among her assets.  The

6   plaintiff's bankruptcy petitions were dismissed.  In applying judicial estoppel to dismiss the case

7   against the accountants, the court stated:

8   > We believe that this is a situation which warrants application of the doctrine of
   > judicial estoppel even absent proof of success in the earlier litigation. Appellant
9   > brazenly admits that she transferred her most valuable asset-her income stream-to a
   > corporation owned wholly by her paramour in order to keep it out of the hands of her
10  > creditors. She then filed for bankruptcy, clearly expecting to reclaim her funds from
   > her trusted friend after all of her lawful debts were discharged. Not once, but three
11  > times, she signed documents under oath for filing with the bankruptcy court which
   > claimed to list all of her assets but said nothing about any interest in Women's Health
12  > or Nationwide or the funds she allegedly believed were being held for her there.
   > Assuming that the doctrine of judicial estoppel should be applied to an unsuccessful
13  > litigant only in the rare situation where the litigant has made an egregious attempt to
   > manipulate the legal system, we agree with the trial court that "this is as egregious as
14  > it gets ...."

15  Thomas, 85 Cal.App.4th at 119.  Unlike in Thomas, here there has been no showing that Plaintiff

16  *intentionally* failed to list the claims against Defendant in his schedules in "an egregious attempt to

17  manipulate the legal system."  Plaintiff's case is not "as egregious as it gets."

18          Nor does the automatic stay of proceedings that accompanies a bankruptcy filing appear to

19  be sufficient to show that Plaintiff was successful at causing the bankruptcy court to accept his

20  position. See Gottlieb v. Kest, 141 Cal.App.4th 110 (2006) (applying Ninth Circuit law).  The

21  Gottlieb court stated:

22  > The automatic stay cannot be deemed an adoption or acceptance of RKG's prior
23  > position because it was not premised even in part on RKG's nondisclosure of the legal
   > claim. . . .
24
   > As the Ninth Circuit explained: "Under the Bankruptcy Code, when a debtor files his
25  > petition for bankruptcy, he receives the benefit of an automatic stay that is imposed
   > on his creditors, ... preventing them from proceeding to collect on their claims....
26  > Under Chapter 11, the stay is also intended to give the debtor time to reorganize his
   > assets in order to rehabilitate his business. . . .  Simply put, RKG was entitled to an
27  > automatic stay regardless of whether it disclosed its legal claim.

28  > In Hamilton, supra, 270 F.3d 778, the Ninth Circuit, in discussing whether an
   > automatic stay by itself constitutes success for purposes of judicial estoppel,

6

**United States District Court**
For the Northern District of California

1  concluded that the debtor there had successfully asserted his prior position because he
2  "enjoy[ed] the benefit of both an automatic stay and a discharge of debt in his
   Chapter 7 bankruptcy proceeding." (Hamilton, supra, at p. 785, italics added.) The
3  court also stated that success would be shown where, for example, a bankruptcy court
   had relied on the nondisclosure of a legal claim in deciding whether to lift a stay or
4  confirm a reorganization plan. ( Id. at p. 784.) These examples would make little
   sense if an automatic stay alone were deemed success.

5  Id. at 144; see also Spann v. DynCorp Tech. Servs., 403 F. Supp. 2d 1082, 1089 (M.D. Ala. 2005)

6  ("[The plaintiff], instead of amending her bankruptcy case to reflect the [legal] claims she now

7  brings, dismissed the bankruptcy. If ... judicial estoppel would be defeated had [the plaintiff]

8  amended her bankruptcy schedules, then it is certainly defeated by her dismissal of the bankruptcy

9  outright. [The defendant] asserts that, although [the plaintiff's] bankruptcy was dismissed, she

10 nonetheless benefitted from it through the automatic stay on collection activity, and that benefit is an

11 'inequity' that judicial estoppel should bar. It is true that a benefit sufficient to trigger judicial

12 estoppel does not have to involve full discharge of a party's debts.... To be sure, [the plaintiff]

13 derived the benefit of an automatic stay as a result of her bankruptcy petition; however, that benefit

14 existed irrespective of the claims she listed (or failed to list) in her filings. In this case, the automatic

15 benefit of a stay on collection action prior to dismissal of a bankruptcy case is not a benefit that

16 threatens judicial integrity in a way sufficient to provide a basis for judicial estoppel."); Stallings v.

17 Hussmann Corp., 447 F.3d 1041, 1045 (8th Cir. 2006) (where a debtor fails to disclose legal claims

18 on its bankruptcy schedules, and the bankruptcy case is dismissed without a discharge of debts, the

19 debtor has not successfully asserted its position for purposes of judicial estoppel).

20      Here, unlike in Hamilton, the bankruptcy court did not certify or confirm a bankruptcy

21 plan, and there is no evidence that the bankruptcy court made any orders at all regarding Plaintiff's

22 schedules.  Thus, there has been no acceptance by the bankruptcy court of Plaintiff's schedules and

23 no showing that he achieved any success in the bankruptcy case.  Therefore, the balance of equities

24 tips against concluding that Plaintiff is judicially estopped from proceeding in this case.  Thus,

25 Defendant's Motion to Dismiss based on judicial estoppel is denied.

26 **2.      Plaintiff's loan origination claims fail because Aurora was not involved in the
            origination process**

27

28      There are no allegations that Defendant had any involvement in the origination of

7

**United States District Court**
For the Northern District of California

1  Plaintiff's loan.  Indeed, it is undisputed that the lender was Magnus, not Defendant Aurora.  Am.

2  Compl. ¶ 16-20; Ex. A.  Plaintiff alleges that he obtained a 30-year Adjustable Rate Mortgage from

3  Magnus.  Am. Compl. ¶ 15.  The deed of trust lists Magnus, not Defendant, as the lender.  Am.

4  Compl. Ex. A.  Thus, Plaintiff cannot state a claim against Defendant for claims arising from loan

5  origination.  See Hafiz v. GreenPoint Mortgage Funding, 652 F. Supp. 2d 1039, 1050 (N.D. Cal.

6  2009) ("Aurora was neither involved in Hafiz's credit application nor in the origination or issuance

7  of the loan to Hafiz. On the face of the complaint, Aurora could not have violated RESPA, the FHA,

8  or the ECOA.").

9        Plaintiff, however, argues that he needs discovery to clarify the agreement between

10  Magnus and Defendant assigning his loan.  In particular, Plaintiff argues that Defendant is Plaintiff's

11  only link to the name of the true foreclosing lender.  Further, Plaintiff argues that the date of the

12  assignment is September 17, 2010 and the substitution of trustee is dated October 8, 2010, but the

13  Notice of Default was recorded on August 27, 2010, so Plaintiff argues that he needs discovery to

14  clarify the relationship between the parties.  The case cited by Plaintiff, Alfaro v. Community

15  Housing Improvement Sys. & Planning Ass'n., 171 Cal.App.4th 1356 (2009), however, does not

16  stand for the proposition that Defendant should not be dismissed on the grounds that Plaintiff

17  requires discovery.

18        Plaintiff also argues that this case is similar to Velasquez v. GMAC, 605 F. Supp. 2d 1049

19  (C.D. Cal. 2008).  Velasquez, however, is inapposite.  There, the plaintiff alleged that the loan

20  originator and the loan servicing "worked together in distributing, selling, and servicing the loans,

21  that they initiated the scheme in order to maximize the loans they sold to consumers and to

22  maximize profits, that [the loan servicer] had full knowledge of [the loan originator's] wrongful acts,

23  and actively participated as an assignee and/or buyer."  Id. at 1068.  The court found that the

24  plaintiff there had essentially alleged aiding and abetting.  Plaintiff here has not alleged that

25  Defendant aided and abetted Magnus in this way.

26        The loan origination claims (claims 1, 6, 8 and 9) fail because Defendant was not involved

27  in loan origination.  Accordingly, Defendant's motion to dismiss is granted as to these claims.

28  Although it appears that amendment would be futile because it appears to be undisputed that

8

1   Defendant was not involved in loan origination, the Court grants Plaintiff leave to amend with the

2   caution that amendments must be made in good faith.

**3.      Plaintiff lacks standing to challenge Defendant's right to foreclose**

4            Defendant argues that Plaintiff lacks standing to challenge Defendant's authority to

5   foreclose.  Plaintiff does not dispute that he has defaulted on his loan, but challenges whether

6   Defendant is the proper party to foreclose.  Defendant argues that if it defrauded an interested party

7   from their rightful interest in the deed of trust, that party would have a claim against Defendant, but

8   Plaintiff would not.  See Fontenot v. Wells Fargo Bank, N.A., 198 Cal.App.4th 256, 272 (2011) ("If

9   MERS indeed lacked authority to make the assignment, the true victim was not plaintiff but the

10  original lender, which would have suffered the unauthorized loss of a $1 million promissory note.");

11  Gomes v. Countrywide Home Loans, 192 Cal.App.4th 1149, 1156-57 (2011) ("Gomes appears to

12  acknowledge that California's nonjudicial foreclosure law does not provide for the filing of a lawsuit

13  to determine whether MERS has been authorized by the holder of the Note to initiate a foreclosure.

14  He argues, however, that we should nevertheless interpret the statute to provide for such a right

15  because the 'Legislature may not have contemplated or had time to fully respond to the present

16  situation.' That argument should be addressed in the first instance to the Legislature, not the courts.

17  Because California's nonjudicial foreclosure statute is unambiguously silent on any right to bring the

18  type of action identified by Gomes, there is no basis for the courts to create such a right. We

19  therefore conclude that the trial court properly sustained Defendants' demurrer to the first and

20  second causes of action in Gomes's complaint.").

21          Gomes left the door open for a properly pled claim to determine the authority of a party to

22  foreclose.  The Gomes stated that: "It is also significant that in each of these cases, the plaintiff's

23  complaint identified a *specific factual basis* for alleging that the foreclosure was not initiated by the

24  correct party. Gomes has not asserted *any* factual basis to suspect that MERS lacks authority to

25  proceed with the foreclosure. He simply seeks the right to bring a lawsuit to find out *whether* MERS

26  has such authority. No case law or statute authorizes such a speculative suit." Gomes, 192

27  Cal.App.4th at 1156 (emphasis in original).  Unlike here, the issue in Gomes was whether the

28  company selling the property in the nonjudicial foreclosure sale (MERS) was authorized to do so by

United States District Court
For the Northern District of California

the owner of the promissory note. See id. at 1155 (rejecting the argument that a plaintiff may test whether the person initiating the foreclosure has the authority to do so; "[t]he recognition of the right to bring a lawsuit to determine a nominee's authorization to proceed with foreclosure on behalf of the noteholder would fundamentally undermine the nonjudicial nature of the process and introduce the possibility of lawsuits filed solely for the purpose of delaying valid foreclosures"). The Gomes court distinguished a case that relied on the same argument presented by Plaintiff here precisely because, in that case, "the plaintiff alleged wrongful foreclosure on the ground that assignments of the deed of trust had been improperly backdated, and thus the wrong party had initiated the foreclosure process. No such infirmity is alleged here." Id.

Here, Plaintiff has not provided allegations that, if taken as true, would support his argument that the foreclosure was initiated by the wrong party. See Opp. at 8-9; Tamburri v. Suntrust Mortg., 2011 WL 6294472, at *11 (N.D. Cal. Dec. 15, 2011) (finding that there was a specific factual basis for the plaintiff's claim where the plaintiff, in part, alleged that the entity that issued the notice of default acted before it had authority to do so). In Tamburri, a notice of default was recorded listing US Bank as the beneficiary, even though the assignment of the deed of trust naming US Bank as the grantee was recorded *after* the notice of default. Under those facts, the court in Tamburri held that the bank had wrongfully asserted an interest in the property which it did not have:

> While MERS' Substitution of Trustee (Recontrust) and Assignment of Deed (U.S. Bank) is dated June 8, 2010, see Docket No. 9, the notary public signature date is June 10, 2010, the day *after* Recontrust recorded the notice of default, and the assignment was not recorded until June 21, 2010. The Notice of Default, by contrast, was dated June 8, 2010, and recorded June 9, 2010. Thus, insofar as Plaintiff contends that the Notice of Default (NOD) is invalid due to a lack of authority to foreclose, Plaintiff's claim is similar to those in Sacchi and Ohlendorf. At the time of the NOD, there had been no assignment.

Tamburri, 2011 WL 6294472, at *12 (emphasis in original). The Tamburri court denied the defendant's motion to dismiss as to the plaintiff's wrongful foreclosure claim insofar as it was based on the plaintiff's allegations that the wrong party initiated foreclosure without any interest in the subject property.

In this case, the notice of default was signed by Quality Loan Service Corporation and recorded on August 27, 2010. RJN Ex. C. On September 1, 2010, Aurora as beneficiary substituted

United States District Court
For the Northern District of California

Quality Loan Service Corporation as trustee.  RJN Ex. B.  The assignment from MERS to Defendant Aurora was signed and notarized on September 10, 2010 and recorded on September 17, 2010.  RJN Ex. A.  That substitution was recorded on October 8, 2010.  Id.  Although the notice of default was recorded before the assignment to Defendant Aurora, there are no allegations that Defendant Aurora, as the assignee of MERS, could not properly assume the foreclosure proceedings as of the time of the assignment.  There are no allegations that the assignment to Defendant was back-dated to a time earlier than the notice of default in an effort to provide authority to the entity that recorded the notice, as it was in Tamburri.  Thus, Plaintiff has not alleged a factual basis for his claim that Defendant lacked the authority to foreclose, and therefore, he lacks standing to challenge Defendant's right to foreclose.

**4.     Plaintiff has stated a claim for violation of California Civil Code section 2923.5**

Section 2923.5 requires that: "A mortgagee, beneficiary, or authorized agent shall contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure. . . . A notice of default filed pursuant to Section 2924 shall include a declaration that the mortgagee, beneficiary, or authorized agent has contacted the borrower, has tried with due diligence to contact the borrower as required by this section, or that no contact was required pursuant to subdivision (h).").  Plaintiff alleges that Aurora initiated foreclosure proceedings before contacting Plaintiff to discuss his loan situation as required by section 2923.5.  Am. Compl. ¶¶ 77-81.  Plaintiff alleges that any contact between the parties was initiated by Plaintiff.  Am. Compl. ¶ 82.

The requirements of section 2923.5 are narrow, and do not require the lender to have much more than minimal contact with a debtor to assess the debtor's position and inform them of various options.  Mabry v. Superior Court, 185 Cal.App.4th 208, 232 (2010) (construing section 2923.5 narrowly).  The Mabry court stated:

> First, to the degree that the words "assess" and "explore" can be narrowly or expansively construed, they must be narrowly construed in order to avoid crossing the line from state foreclosure law into federally preempted loan servicing. Hence, any "assessment" must necessarily be simple-something on the order of, "why can't you make your payments?" The statute cannot require the lender to consider a whole new loan application or take detailed loan application information over the phone. (Or, as is unlikely, in person.)

11

Second, the same goes for any "exploration" of options to avoid foreclosure. Exploration must necessarily be limited to merely telling the borrower the traditional ways that foreclosure can be avoided (e.g., deeds "in lieu," workouts, or short sales), as distinct from requiring the lender to engage in a process that would be functionally indistinguishable from taking a loan application in the first place. In this regard, we note that section 2923.5 directs lenders to refer the borrower to "the toll-free telephone number made available by the United States Department of Housing and Urban Development (HUD) to find a HUD-certified housing counseling agency." The obvious implication of the statute's referral clause is that the lender itself does not have any duty to become a loan counselor itself.

Finally, to the degree that the "assessment" or "exploration" requirements impose, in practice, burdens on federal savings banks that might arguably push the statute out of the permissible category of state foreclosure law and into the federally preempted category of loan servicing or loan making, evidence of such a burden is necessary before the argument can be persuasive. For the time being, and certainly on this record, we cannot say that section 2923.5, narrowly construed, strays over the line.

Mabry, 185 Cal.App.4th at 232.

Although Plaintiff alleges that all contact was initiated by him, other allegations of the complaint show that Defendant contacted Plaintiff. Plaintiff alleges that on May 5, 2010, Defendant sent him a letter advising him that he may be eligible for a loan modification. Am. Compl. ¶ 25. There are no allegations that he contacted Defendant first about the loan modification. Defendant argues that the May 5, 2010 letter shows that Defendant complied with section 2923.5. However, the statute states that the lender must contact Plaintiff in person or by phone and there are no allegations or evidence showing that this was done before the notice of default was filed. Therefore, Plaintiff has stated a claim for violation of section 2923.5, and Defendant's Motion to Dismiss this claim is denied.

**5.      Plaintiff has failed to state a claim for fraud**

Claims sounding in fraud are subject to a heightened pleading standard. Rule 9(b) of the Federal Rules of Civil Procedure requires that "[i]n allegations of fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To satisfy the rule, a plaintiff must allege the "who, what, where, when, and how" of the charged misconduct. Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997). In other words, "the circumstances constituting the alleged fraud must be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong." Vess v. Ciba-Geigy Corp. U.S.A., 317 F.3d 1097, 1106 (9th Cir. 2003). Further, when charging fraud

against a business entity, the pleading requirements are more strict:

> The requirement of specificity in a fraud action against a corporation requires the plaintiff to allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written.

Tarmann v. State Farm Mutual Auto Ins. Co., 2 Cal.App.4th 153, 157 (1991).

Plaintiff's fraud claim alleges fraud in the origination of the loan. Not only is this claim dismissed on the grounds stated above that Defendant was not involved in loan origination, it is dismissed for failure to state a claim. Plaintiff alleges that the payment on the adjustable rate mortgage that he obtained was $3,134.37, which he alleges appeared to be calculated based on a fully amortized principal and interest payment. Am. Compl. ¶ 52. Plaintiff alleges, however, that Defendant did not disclose to Plaintiff that the payment was an interest only payment. Am. Compl. ¶ 52. Plaintiff alleges that there was no indication that the interest rate would change after five years, and that the interest rate would change every twelve months. Am. Compl. ¶ 52. Plaintiff alleges that he was not provided with a payment schedule. Am. Compl. ¶ 52. Plaintiff alleges that had Defendant disclosed that the amount of the monthly payment necessary to pay down the principal during the first five years of the loan, Plaintiff would not have entered into the loan. Am. Compl. ¶ 52. Plaintiff also alleges that had Defendant explained the real calculation of the full payment, which was not actually a fully amortized payment, Plaintiff would not have entered into the loan. Am. Compl. ¶ 53. Plaintiff also alleges that had Defendent explained the concept of a limited payment, which resulted in increased payments, Plaintiff would not have entered into the loan. Am. Compl. ¶ 54. Plaintiff alleges that had Defendant disclosed how the terms of the loan could affect its affordability and create the possibility of the loss of the property, he would not have entered into it. Am. Compl. ¶ 55. Plaintiff also alleges that the loan documents stated that the interest rate "may" change, when in reality the interest rate was actually going to change. Am. Compl. ¶ 56. Plaintiff alleges that he only recently discovered the fraud when he reviewed the loan documents during the loan modification process, within the prior two years. Am. Compl. ¶ 59. Plaintiff alleges that he did not fill out the loan application, and that his income was inflated on the application. Am. Compl. ¶ 60. Plaintiff alleges that as a result of Defendant's wrongdoing in

inflating Plaintiff's income and qualifying Plaintiff for a loan he could never afford, Plaintiff has suffered financial hardship.  Am. Compl. ¶ 63.  In addition, Plaintiff alleges that he was not given enough time to read the loan documents at closing and was pressured to sign quickly.  Am. Compl. ¶ 68.  Finally, Plaintiff alleges that he justifiably relied on Defendant's deception, which caused his injuries.  Am. Compl. ¶ 70.

Plaintiff has failed to state his fraud claim with particularity.  Plaintiff's complaint states that "Defendants" made certain statements, and does not distinguish between Defendants in this case.  In fact, it appears that the allegations in this claim are not against Defendant Aurora.  Instead, Plaintiff argues in his opposition brief that he alleged that Magnus, the original lender and predecessor in interest to Defendant withheld material facts over the phone and at the closing in November and December 2006 for the purpose of trapping Plaintiff in an unaffordable loan.  Opp. at 11-12.  These allegations do not support a fraud claim against Defendant Aurora.  Thus, Defendant's Motion to Dismiss the fraud claim is granted.

**6.      Plaintiff has failed to state a claim for breach of contract**

In order to state a breach of contract claim, a plaintiff must plead the following elements: "the existence of the contract, performance by the plaintiff or excuse for nonperformance, breach by the defendant, and damages." First Commercial Mortgage Co. v. Reece, 89 Cal. App. 4th 731, 745 (2001).  Plaintiff alleges that in or about November 2010, he was advised that he was approved for a Special Forbearance Agreement.  Am. Compl. ¶ 93.  Plaintiff alleges that the terms of the agreement provided that Plaintiff would pay a stipulated payment of $3,134.38 as the first payment, and thereafter five monthly payments of $2,983.00.  Am. Compl. ¶ 94.  Plaintiff alleges that the terms of the agreement provided in consideration of the promises therein, Defendant would forbear from exercising any or its rights and remedies existing during the term of the agreement.  Am. Compl. ¶ 95.  Plaintiff alleges that the agreement provided that Plaintiff was to provide financial information to Defendant.  Am. Compl. ¶ 96.  Plaintiff signed the agreement, and as a result, Defendant placed the foreclosure sale on hold.  Am. Compl. ¶¶ 97-98.  Plaintiff alleges that on or about February 3, 2011, Defendant advised Plaintiff that since he was complying with the terms of the agreement, Defendant would consider him for a permanent loan upon submission of further financial

information.  Am. Compl. ¶ 99.  Plaintiff alleges that he made all payments under the agreement, yet on May 25, 2011, Quality recorded a notice of trustee's sale.  Am. Compl. ¶¶ 100-01.  Plaintiff alleges that therefore, Defendants breached the written agreement it entered into with Plaintiff "not to foreclose on  the Subject Property while it was reviewing Plaintiff for a permanent loan modification agreement."  Am. Compl. ¶ 103.  Plaintiff alleges that Defendants "reiterated and assured Plaintiff that they would not proceed with a foreclosure of Plaintiff's property while they were in the forbearance agreement, and while Defendant was reviewing him for a permanent loan modification agreement.  Am. Compl. ¶ 104.  Plaintiff alleges that on or about July 8, 2011, based on the fact that he would imminently be approved for a loan modification, Plaintiff sent a check to Defendant in the amount of $4,021.22, which Defendant would not accept.  Am. Compl. ¶ 105.

Plaintiff's allegations, however, are contradicted by the forbearance agreement itself.  Am. Compl. Ex. E.  Where an exhibit to a pleading is inconsistent with the pleading, the exhibit controls. Gamble v. GMAC Mortg. Corp., 2009 WL 400359, at *3 (N.D. Cal. Feb. 18, 2009) (granting motion to dismiss where the allegations in the complaint of the date of an agreement were contradicted by an exhibit).  Here, the forbearance agreement states, in relevant part:

> 8. Status of Default and Foreclosure. Customer acknowledges that if the Lender previously notified the Customer that the account was in default, that the Note and Security Instrument are accelerated and the debt evidenced by the Note is due in full, the account remains in default, such Loan Documents remain accelerated, and such debt due in full, although Customer may be entitled by law to cure such default by bringing the loan evidenced by Note current rather than paying it in full. Lender's acceptance of any payments from Customer which, individually, are less than the total amount due to cure the default described herein shall in no way prevent Lender from continuing with collection action, or require Lender to re-notify Customer of such default, re-accelerate the loan, re-issue any notice, or resume any process prior to Lender proceeding with collection action if Customer Defaults. Customer agrees that a foreclosure action if commenced by the Lender against Customer will not be withdrawn unless Lender determines to do so by applicable law. In the event Customer Defaults, the foreclosure will commence, or resume from the point at which it was placed on hold, without further notice.

Am. Compl. Ex. E at 3.  In this case, the notice of default was recorded on August 27, 2010, and the forbearance agreement was signed in December 2010.  Therefore, Plaintiff had already been notified that his account was in default, triggering application of paragraph 8.  Plaintiff's allegation that Defendant breached the written agreement "not to foreclose on the Subject Property while it was reviewing Plaintiff for a permanent loan modification agreement," is contradicted by paragraph 8,

15

which states that Defendant does not agree to forego foreclosure.  Thus, Defendant's motion to dismiss is granted.

Defendant also argues that any oral promises not to foreclose are unenforceable under the statute of frauds.  "A modification of a contract is a change in the obligations of a party by a subsequent mutual agreement of the parties." <u>Secrest v. Security Nat. Mortg. Loan Trust 2002-2</u>, 167 Cal.App.4th 544, 553 (2008). "A contract coming within the statute of frauds is invalid unless it is memorialized by a writing subscribed by the party to be charged or by the party's agent." <u>Secrest</u>, 167 Cal.App.4th at 552 (citing Cal. Civ. Code § 1624)). An "agreement by which a lender agreed to forbear from exercising the right of foreclosure under a deed of trust securing an interest in real property comes within the statute of frauds." <u>Secrest</u>, 167 Cal.App.4th at 547. "An agreement to modify a contract that is subject to the statute of frauds is also subject to the statute of frauds." <u>Secrest</u>, 167 Cal.App.4th at 553.  To the extent that Plaintiff bases this claim on alleged oral promises, those are barred by the statute of frauds unless the promises were in writing or could be performed within one year.

**7.      Plaintiff has failed to state a claim for breach of the implied covenant of good faith and fair dealing**

Plaintiff alleges that Defendant breached the implied covenant of good faith and fair dealing when Defendant willfully did not accept mortgage payments from Plaintiff in an attempt to force Plaintiff's property into foreclosure.  Am. Compl. ¶¶ 127-130.  Plaintiff also alleges that Defendant also breached the covenant of good faith and fair dealing when Defendants continued the foreclosure process despite Defendants' assurances that Defendants would suspend all foreclosure activity while reviewing Plaintiff for a loan modification.  Am. Compl. ¶¶ 132-133.

The covenant of good faith is an implied term arising out of a contract itself.  <u>Kim v. Regents of Univ. of Cal.</u>, 80 Cal.4th 160, 164 (2000).  "The existence of a contractual relationship is thus a prerequisite for any action for breach of the covenant." <u>Id.</u>  "It is universally recognized the scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract." <u>Carma Developers (California), Inc. v. Marathon Development California, Inc.</u>, 2 Cal.4th 342, 373 (1992) (stating that an implied covenant of good faith and fair dealing cannot contradict the express terms of a contract).  Here, because Plaintiff has not stated a

1   claim for breach of contract, he cannot state a claim for breach of the implied covenant of good faith

2   and fair dealing.

3        Further, in <u>Foley v. Interactive Data Corp.</u>, 47 Cal.3d 654, 693 (1988), the California

4   Supreme Court reigned in the extension of the tort remedies for violation of the implied covenant of

5   good faith and fair dealing.  <u>See</u> <u>Price</u>, 213 Cal.App.3d at 478 ("But the implications of the court's

6   analysis [in <u>Foley</u>] presage a close scrutiny of tort recovery for breach of the implied covenant of

7   good faith and fair dealing outside of the insurance context. The decision surely precludes the sort of

8   loose extension of tort recovery, based on 'quasi-fiduciary' relationship, sanctioned in <u>Commercial</u>

9   <u>Cotton v. United California Bank</u>, <u>supra</u>, 163 Cal.App.3d 511.").  In a case interpreting <u>Foley</u>, the

10  state court of appeals stated:

11      While <u>Foley</u> may leave this question open, albeit narrowly, it is clear from the court's
    failure to find sufficiently insurance-like characteristics to justify permitting tort

12  actions against employers who discharge employees in bad faith, that it would not
    permit such an action in an ordinary commercial context where a lender refuses to

13  honor an oral commitment to extend or "roll over" short-term loans. <u>Foley</u>, impliedly
    if not expressly, limits the ability to recover tort damages in breach of contract

14  situations to those where the respective positions of the contracting parties have the
    fiduciary characteristics of that relationship between the insurer and insured.

15

16  <u>Mitsui Manufacturers Bank v. Superior Court</u>, 212 Cal.App.3d 726, 730 (1989).

17      Thus, here, where the relationship between Plaintiff and Defendants is that of lender and

18  borrower, it is unlikely that California law would uphold a claim for breach of the covenant of good

19  faith and fair dealing.  Accordingly, Defendant's motion to dismiss this claim is granted without

20  leave to amend based on <u>Foley</u>.

21  **8.**    **Plaintiff has failed to state a claim for violation of RESPA**

22      Plaintiff alleges that Defendants failed to respond to his qualified written request (QWR)

23  and a validation of debt (VOD) seeking information as to the servicing of Plaintiff's note that were

24  sent on September 26, 2011.  Am. Compl. ¶¶ 115-16.  Plaintiff alleges that by failing to respond to

25  those documents, Defendants have failed to provide Plaintiff with proof of the debt allegedly owed,

26  causing Plaintiff's inability to make adequate payments on his loan resulting in substantial negative

27  amortization and lost equity on his home.  Am. Compl. ¶ 117.  Plaintiff alleges that his inability to

28  determine the amount Defendants allege is owed by Plaintiff has resulted in substantial fees and

United States District Court
For the Northern District of California

1    penalties.  Am. Compl. ¶ 118.

2         Defendant argues that Plaintiff's claim is conclusory because it fails to explain why his

3    correspondence was a proper QWR under 12 U.S.C. § 2605(e)(1)(B)(ii):

> (e) Duty of loan servicer to respond to borrower inquiries
> (1) Notice of receipt of inquiry
> (A) In general
> If any servicer of a federally related mortgage loan receives a qualified written
> request from the borrower (or an agent of the borrower) for information relating to
> the servicing of such loan, the servicer shall provide a written response
> acknowledging receipt of the correspondence within 20 days (excluding legal public
> holidays, Saturdays, and Sundays) unless the action requested is taken within such
> period.
> (B) Qualified written request
> For purposes of this subsection, a qualified written request shall be a written
> correspondence, other than notice on a payment coupon or other payment medium
> supplied by the servicer, that--
> (i) includes, or otherwise enables the servicer to identify, the name and account of the
> borrower; and
> (ii) includes a statement of the reasons for the belief of the borrower, to the extent
> applicable, that the account is in error or provides sufficient detail to the servicer
> regarding other information sought by the borrower.

14   See also Harris v. American General Finance, Inc., m2005 WL 1593673, at *3 (D. Kan. July 6,

15   2005) ("A letter cannot be "qualified" under the statute if it does not relate to the servicing of the

16   account, i.e. the allegation of an inaccurate account.").  Specifically, Defendant argues that the QWR

17   is not a proper one because Plaintiff's letter does not challenge how the loans were serviced and

18   does not allege any particular problems with the servicing of the loan.  See Pettie v. Saxon Mortg.

19   Servs., 2009 WL 1325947, at * (W.D. Wash. May 12, 2009) ("Plaintiffs' Inquiry Letter provided no

20   such statement. Instead it said: "we dispute the amount that is owed according to the Monthly

21   Billing Statement and request that you send us information about fees, costs and escrow accounting

22   on our loan. This is a 'qualified written request' pursuant to the Real Estate Settlement Procedures

23   Act (section 2605(e))" No where in the Inquiry Letter do Plaintiffs offer any reasons for their dispute

24   of the amount due on the loan. RESPA § 2605(e)(1)(B) clearly requires that a disputing party give

25   specific "reasons" for claiming that an account is in error. Plaintiffs offer no reason why the clear

26   and unambiguous meaning of the statute should not govern this case. Nor do they cite to any case

27   law interpreting RESPA § 2605(e)(1)(B) in another light. Allowing borrowers to allege error without

28   justification for their belief for such error would permit frivolous requests for document production

at the expense of loan and servicing companies. Because Plaintiffs failed to provide any statement of reasons for their dispute of the loan amount, their Inquiry Letter does not constitute a qualified written request under RESPA.")

Here, the QWR states that "I suspect violations of RESPA or of TILA in the processing of certain fees associated with my loan and loan documentation." Compl. Ex. K. Plaintiff's QWR is not a proper one because it does not include a statement of the reasons that Plaintiff believes that the account is in error or provide sufficient detail to Defendant regarding other information sought by Plaintiff. Thus, Plaintiff has failed to state a claim for violation of RESPA, and Defendant's Motion to Dismiss this claim is granted. Although it appears that amendment would be futile because the language of the QWR appears to be undisputed, the Court grants Plaintiff leave to amend with the caution that amendments must be made in good faith.

**9. Plaintiff has failed to state a claim for violation of TILA**

Plaintiff alleges that Defendants violated TILA by failing to provide Plaintiff with accurate material disclosures and by not taking into account the intent of the legislature in approving TILA which was to fully inform home buyers of the pros and cons of adjustable rate mortgages and negative amortization mortgages. Am. Compl. ¶ 138. Plaintiff alleges that Defendants failed to inform him that the principal balance of the loan would increase, and that the amount of the monthly payment would dramatically increase. Am. Compl. ¶ 139. Plaintiff alleges that Defendant failed to provide any disclosures until months after the loan closed. Am. Compl. ¶ 140. Plaintiff alleges that the statute of limitations was tolled due to Defendants' failure to effectively provide the required disclosures, and Plaintiff's inability to discovery the TILA violations until going through the loan modification process. Am. Compl. ¶ 141.

Plaintiff's TILA claims are time-barred. The statute of limitations for a TILA claim is one year for a damages claim and three years for a rescission claim. 15 U.S.C. § 1635(f), 1640(e). Here, Plaintiff's loan closed in December 2006, but Plaintiff did not bring this action until 2012, beyond even the longest limitations period.

Plaintiff argues, however, that his TILA claims are equitably tolled. "Equitable tolling is generally applied in situations 'where the claimant has actively pursued his judicial remedies by

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass.' " O'Donnell v. Vencor, Inc., 465 F.3d 1063, 1068 (9th Cir.2006) (quoting Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990)). "Equitable tolling may be applied if, despite all due diligence, a plaintiff is unable to obtain vital information bearing on the existence of his claim." Santa Maria v. Pacific Bell, 202 F.3d 1170, 1178 (9th Cir. 2000). "If a reasonable plaintiff would not have known of the existence of a possible claim within the limitations period, then equitable tolling will serve to extend the statute of limitations for filing suit until the plaintiff can gather what information he needs." Id.; see also Stoll v. Runyon, 165 F.3d 1238, 1242 (9th Cir.1999) ("Equitable tolling applies when the plaintiff is prevented from asserting a claim by wrongful conduct on the part of the defendant ...").

Even construing the complaint liberally, Plaintiff has failed to allege sufficient facts demonstrating entitlement to equitable tolling. Assuming that Defendant's acts violated TILA, Plaintiff had the information he needed to discover and bring an action regarding the alleged wrongs more than three years before filing suit. See Meyer v. Ameriquest Mortgage Co., 342 F.3d 899, 902 (9th Cir. 2003) ("The failure to make the required disclosures occurred, if at all, at the time the loan documents were signed."). Nothing in the complaint suggests that Plaintiff was prevented from comparing his loan documents and disclosures with TILA statutory and regulatory requirements. See Hubbard v. Fidelity Federal Bank, 91 F.3d 75, 79 (9th Cir.1996) (determining that the plaintiff's TILA claims based on the failure to make disclosures was time-barred: "Hubbard argues the statute of limitations should have been tolled until she discovered 'there were possible 'anomalies' or errors in her loan.' However, nothing prevented Hubbard from comparing the loan contract, Fidelity's initial disclosures, and TILA's statutory and regulatory requirements."). Nor did Plaintiff plead any facts demonstrating that equitable tolling is warranted under the circumstances, such as "facts showing that he actively pursued his judicial remedies by filing a defective pleading during the statutory period, was induced or tricked by defendants' misconduct into allowing the filing deadline to pass, or was unable to obtain vital information bearing on the existence of his TILA claim, despite all due diligence." Rosal v. First Fed. Bank of Cal., 671 F. Supp. 2d 1111, 1123 (N.D. Cal. 2009). Plaintiff has failed to sufficiently allege tolling.

1   Plaintiff's TILA claim is dismissed for failure to state a claim and because it is time-barred.

2   Although it appears that amendment would be futile because this claim is time-barred, the Court

3   grants Plaintiff leave to amend with the caution that amendments must be made in good faith.

4   **10.     Plaintiff has not stated a claim for rescission**

5   Plaintiff alleges that he is entitled to rescind the loan because of the TILA violations, failure

6   to provide proper disclosures, intentional fraudulent acts, fraudulent concealment and public policy.

7   Am. Compl. ¶¶ 149-152.  Rescission is a remedy, not a claim.  In addition, rescission is not

8   appropriate because Plaintiff has not made an unconditional offer of payment and representation of

9   their present ability to pay.  See Joshua Tree Townsite Co. v. Joshua Tree Land Co., 100 Cal.App.2d

10  590, 596 (1950) ("A party to a contract who has defaulted cannot seek rescission. Rescission is not

11  allowable where the party demanding it cannot or does not restore the other party to the condition he

12  would have been in but for the contract.") (internal citations omitted).  Therefore, Defendant's

13  Motion to Dismiss Plaintiff's rescission claim is granted without leave to amend.

14  **11.     Plaintiff's claim for injunctive relief fails**

15  Plaintiff seeks a stay of the foreclosure sale, which according to the opposition brief was to

16  take place on April 9, 2012.  Am. Compl. ¶¶ 182-185; Opp. at 20.  Injunctive relief is not a claim,

17  but a remedy.   See Cox Communications v. City of San Marcos, 204 F. Supp. 2d 1272, 1283 (S.D.

18  Cal. 2002) (dismissing a claim for injunctive relief because it is not a claim, but is a remedy ).  This

19  claim is dismissed, but to the extent that Plaintiff files an amended complaint, he may include

20  injunctive relief in his prayer for relief.

21  **Conclusion**

22  Defendant's motion to dismiss is granted in part and denied in part, with leave to amend as

23  stated above.  Any amended complaint shall be filed no later than July 26, 2012.  The Clerk of the

24  Court shall reopen this closed case.  A case management conference is set for August 28, 2012 at

25  3:00 p.m.  A joint case management conference statement shall be filed no later than August 21,

26  2012.  **IT IS SO ORDERED.**

27  Dated: July 9, 2012

_____
ELIZABETH D. LAPORTE
United States Magistrate Judge

28

21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California